UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| NATASHA RODRIGUEZ,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1]<br><br>Defendant. | Case No. SA CV 16-1173-DFM<br><br>MEMORANDUM OPINION AND ORDER |

Natasha Rodriguez ("Plaintiff") appeals from the Social Security Commissioner's final decision denying her application for Supplemental Security Income ("SSI"). For the reasons discussed below, the Commissioner's decision is reversed and this case is remanded for further proceedings.

///

///

///

---

[1] On January 23, 2017, Berryhill became the Acting Social Security Commissioner. Thus, she is automatically substituted as defendant under Federal Rule of Civil Procedure 25(d).

# I.
# BACKGROUND

Plaintiff filed an SSI application on October 23, 2012.[2] See Administrative Record ("AR") 179-87. Plaintiff alleged that her disability began in 1996. See AR 236. After her application was denied, she requested a hearing before an administrative law judge ("ALJ"). See AR 256-57. At a January 2015 hearing, the ALJ heard testimony by a vocational expert ("VE") and Plaintiff, who was represented by counsel. See AR 40-65.

On February 27, 2015, the ALJ denied Plaintiff's claims. See AR 14-39. The ALJ found that Plaintiff had not engaged in substantial gainful activity since at least October 23, 2012, and that Plaintiff has severe impairments of asymmetric inflammatory polyarthropathy and fibromyalgia. See AR 19. The ALJ determined that Plaintiff's medically determinable impairments of personality disorder and polysubstance abuse were non-severe. See id. Despite Plaintiff's impairments, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work with the following limitations: she is limited to lifting or carrying ten pounds occasionally and less than ten pounds frequently; she is able to stand or walk two hours out of an eight-hour work day; she can sit for six hours out of an eight-hour work day; she can occasionally climb, balance, kneel, stoop, crawl, or crouch; she cannot climb ladders, ropes, or scaffolds; she must avoid concentrated exposure in the workplace to extreme cold and industrial hazards; and she can occasionally reach overhead bilaterally. See AR 23-31.

---

[2] Before her October 2012 application, Plaintiff's mother filed on her behalf a separate claim for disability benefits that was denied in 2011. See AR 69-70. Plaintiff's mother had filed an untimely request for hearing, and the ALJ presiding over that claim found no good cause for her missing the deadline to request a hearing. See id.

|   |   |
|---|---|
| 1 | Based on the VE's testimony, the ALJ found that given Plaintiff's age, |
| 2 | education, work experience, and RFC, Plaintiff could work as a food/beverage |
| 3 | order clerk and a final assembler. See AR 32. Thus, the ALJ found that |
| 4 | Plaintiff was not disabled. See id. |
| 5 | The Appeals Council denied review of the ALJ's decision, which |
| 6 | became the final decision of the Commissioner. See AR 7-12; see also 20 |
| 7 | C.F.R. § 416.1481. Plaintiff sought judicial review in this Court. See Dkt. 1. |

## II.
## DISCUSSION

Plaintiff argues that the ALJ erred in improperly considering the medical evidence to conclude that Plaintiff's mental health impairments were not severe, improperly considering the reports and opinions of treating physicians Drs. George Lawry and Brian Pederson and of consultative examiner Dr. Faraz Alam, improperly discrediting her subjective symptom testimony, and failing to address "good cause" to reconsider Plaintiff's prior claim under Social Security Ruling ("SSR") 91-5p. See Joint Stipulation ("JS") at 2-3.

**A.     Severity of Mental Impairment**

    **1.     Step Two Requires Only a De Minimis Showing of Limitation**

At step two of the sequential evaluation process, the claimant has the burden to show that she has one or more "severe" medically determinable impairments that can be expected to result in death or last for a continuous period of at least 12 months. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987) (noting claimant bears burden at step two); Celaya v. Halter, 332 F.3d 1177, 1180 (9th Cir. 2003) (same). To establish that a medically determinable impairment is "severe," the claimant must show that it "significantly limits [her] physical or mental ability to do basic work activities." 20 C.F.R.

§ 416.920(c); accord § 416.921(a).³ "An impairment or combination of impairments may be found not severe 'only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (internal citation omitted) (emphasis in original); see also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) ("[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims."). "[A]n ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" Webb, 433 F.3d at 687 (internal citation omitted). Thus, applying the applicable standard of review to the requirements of step two, a court must determine whether an ALJ had substantial evidence to find that the medical evidence clearly established that the claimant did not have a medically severe impairment or combination of impairments. See id. at 688 (requiring analysis beyond step two where there was not a "total absence of objective evidence" of a severe impairment).

### 2. The ALJ Erred by Finding Plaintiff's Mental Impairments Non-Severe

Plaintiff contends that the medical evidence supports a finding of severe mental impairment. See JS at 3-10. Specifically, Plaintiff argues that two state agency doctors (Drs. Donna DeFelice and Sonya Adamo) found her to have a severe mental impairment, see AR 79-80, 103-04, her treating physician (Dr.

---

³ Where, as here, the ALJ's decision is the final decision of the Commissioner, the reviewing court generally applies the law in effect at the time of the ALJ's decision. See Lowry v. Astrue, 474 F. App'x 801, 804 n.2 (2d Cir. 2012) (applying version of regulation in effect at time of ALJ's decision despite subsequent amendment); Garrett ex rel. Moore v. Barnhart, 366 F.3d 643, 647 (8th Cir. 2004) ("We apply the rules that were in effect at the time the Commissioner's decision became final.").

4

Valeo Ede) reported anxiety and depression, see AR 361, a licensed clinical social worker documented mental problems manifesting in suicidal gestures and poor school attendance, see AR 400-03, a state agency examining clinical psychologist (Dr. Aaron Bowen) concluded she had "one of the clearest cases" of borderline personality disorder he had ever seen, AR 404-14, an examining physician (Dr. Ralph Lissaur) assigned Plaintiff a GAF score of 51 and noted that Plaintiff could not tolerate the stresses of normal employment, see AR 498-502, and another two examining physicians (Drs. George Lawry and Brian Pederson) determined she suffered from depression, see AR 480, 593.

The Commissioner maintains that any error by the ALJ at this step was not harmful and still results in a finding of no disability because Plaintiff could work as a food/beverage order clerk and final assembler. See JS at 11. The Commissioner also contends that the ALJ's determination at step two was based on the "entire discussion of the medical evidence" rather than the conclusions of various physicians. See id. at 12. Specifically, the Commissioner argues that the ALJ properly rejected the findings of Drs. DeFelice and Adamo by rejecting the underlying evidence in support of their findings, see id., rejected the opinions of Drs. Bowen and Lissaur on grounds that the opinions were inconsistent with the record as a whole, see id. at 12-14, rejected the clinical social worker's opinion because it was based on an outdated evaluation of Plaintiff and because she is not an acceptable medical source, see id. at 14, and rejected Dr. Ede's findings of depression and anxiety as being inconsistent with other physicians' assessments and because his opinion did not explain what functional limits these diagnoses imposed, see id. at 14-15.

Here, the evidence does not clearly establish the non-severity of Plaintiff's mental impairments. See Webb, 433 F.3d at 687. To the contrary, and as the ALJ acknowledged, Drs. DeFelice and Adamo found that Plaintiff

5

had "marked" limitations in interacting with others and "moderate" limitations in maintaining attention and concentration, working by a schedule, completing a normal workday and workweek, accepting instructions, responding to criticism, getting along with coworkers, and responding appropriately to changes. See AR 22; see also AR 83-85; 108-10. The ALJ erred by assigning little weight to the opinions of Drs. DeFelice and Adamo without any explanation. See Dogsleep v. Astrue, 266 F. App'x 664, 665 (9th Cir. 2008) (explaining ALJ may not ignore findings of reviewing physician and must give specific and legitimate reasons for rejecting them). Likewise, Plaintiff's treating physician, Dr. Ede, reported that Plaintiff's physical and/or psychological impairments were severe enough to interfere "constantly" with Plaintiff's attention and concentration during a typical workday. See AR 361 (also noting Plaintiff's anxiety and depression). The ALJ never addressed Dr. Ede's report in his step two analysis, offering no reasons, much less any clear and convincing ones, for discounting the treating physician's opinion. See Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) (stating that the ALJ must discuss significant and probative evidence); Reddick v. Chater, 157 F.3d 715, 722, 724 (9th Cir. 1998) (noting that an ALJ's findings "must be supported by specific, cogent reasons" and that "[w]here the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons supported by substantial evidence"). Presumably, "marked" and "moderate" stress limitations will have more than a "minimal effect" on a claimant's ability to work, Webb, 433 F.3d at 686, because an individual's ability to work turns, at least in part, on his or her ability to handle work-related stress. See 20 C.F.R. § 416.921(b)(5) (basic work activities include "[r]esponding appropriately to . . . usual work situations"). Indeed, with respect to such concentration-, social functioning-, and discipline-related limitations, a non-severe finding is generally appropriate if such limitations are

rated as "none" or "mild." See 20 C.F.R. § 416.920a(d)(1). By inference, Plaintiff's "marked" and "moderate" mental impairments should have been deemed severe at step two. See Hacker v. Astrue, No. 10-0039, 2011 WL 2496580, at *4 (C.D. Cal. June 22, 2011) (reasoning similar).

Despite the Commissioner's contentions, the ALJ's assignment of little weight to the opinions of Drs. Bowen and Lissaur for purposes of the analysis at step two is not supported by substantial evidence. See Tackett v. Apfel, 180 F.3d 1094, 1102 (9th Cir. 1999) ("The ALJ must set out in the record his reasoning and the evidentiary support for his interpretation of the medical evidence."). While the ALJ noted that the functional limitations assessed by Drs. Bowen and Lissaur were inconsistent with Plaintiff's treatment records as a whole, the only contradicting evidence the ALJ gave was Plaintiff's own testimony, as recorded by her therapist, that she participated in AA/NA meetings, art therapy sessions, shopping, and visits to the beach, that she feared denial of social security benefits if she did not answer questions correctly, and that she actually had admitted polysubstance use. See AR 22-23, 515, 517, 526-27. Instead of relying on the opinions of the treating and consultative physicians, the ALJ apparently relied on Plaintiff's subjective testimony to her therapist. Without more, this testimony is insufficient to counter the opinions of the examining and consultative physicians noting that Plaintiff had GAF scores of 40-51, see AR 21, 412, 502, 504-33, and that Plaintiff had "serious symptoms or difficulty functioning" and "could not tolerate the stress of employment," see AR 20-21. See also Tackett, 180 F.3d at 1102-03 (reversing an ALJ's work limitations determination where the ALJ relied on brief claimant testimony, alone, to rebut the medical record); Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (when uncontroverted by another doctor, an examining physician's opinion may only be rejected for "clear and convincing reasons").

Accordingly, for the reasons stated above, the Court finds that the ALJ erred at step two. The Court thus determines that the ALJ's decision is not supported by substantial evidence. See Mayes v. Massanari, 276 F.3d 453, 458-59 (9th Cir. 2001).

**B.    Opinions of Plaintiff's Treating and Consultative Physicians and Plaintiff's Subjective Symptom Testimony**

Plaintiff contends that the ALJ erred in failing to properly consider the opinions of treating physicians Drs. George Lawry and Brian Pederson and consultative examiner Dr. Faraz Alam and in discrediting her subjective symptom testimony. See JS at 2. Because remand is warranted based on the ALJ's failure to assess the effect of Plaintiff's mental impairments on her residual functional capacity and, more broadly, her ability to perform any work on a sustained basis, the Court does not reach these issues at this time.

**C.    The Court Lacks Jurisdiction to Decide Plaintiff's "Good Cause" Claim**

Plaintiff argues that the ALJ erred in failing to address the April 2011 dismissal of her claim for disability benefits originally brought by her mother. See JS 47-49; AR 69-70. Specifically, Plaintiff alleges that good cause exists to warrant reconsideration of the April 2011 ruling under SSR 91-5p because Plaintiff was a minor at that time and because Plaintiff's mother filed the late appeal, to no fault of Plaintiff. See JS at 49. Because there has been no "final decision of the [Commissioner] made after a hearing" on that claim, the Court lacks jurisdiction to rule on this issue. See 42 U.S.C. § 405(g).

Judicial review of claims arising under Title XVI of the Social Security Act is authorized and limited by 42 U.S.C. § 405(g). See Subia v. Comm'r of Soc. Sec., 264 F.3d 899, 902 (9th Cir. 2001). The Supreme Court has stated that § 405(g) "clearly limits judicial review to a particular type of agency action, a 'final decision of the Secretary made after a hearing.'" Id. (quoting

Califano v. Sanders, 430 U.S. 99, 108 (1977)) (emphasis in original Subia opinion). Such reviewable "final decisions" are those "by the Appeals Council either reviewing or denying review" based "on the merits." Matlock v. Sullivan, 908 F.2d 492, 493-94 (9th Cir. 1990). Moreover, "[a] decision not to reopen a prior, final benefits decision is discretionary and ordinarily does not constitute a final decision; therefore, it is not subject to judicial review." Udd v. Massanari, 245 F.3d 1096, 1098-99 (9th Cir. 2001); see also Kent v. Barnhart, 152 F. App'x 563, 564 (9th Cir. 2005) ("In general, the courts have no jurisdiction to review denials of reopening decisions.").

While the "final decision" requirement is necessary for exhaustion, courts may waive this requirement by a claimant's successful challenge on constitutional grounds. See Cassim v. Bowen, 824 F.2d 791, 794-95 (9th Cir. 1987); Hoye v. Sullivan, 985 F.2d 990, 991 (9th Cir. 1992) (a court may waive exhaustion requirement where a claimant "demonstrates that his constitutional claim is (1) collateral to a substantive claim of entitlement, (2) colorable, and (3) 'one whose resolution would not serve the purposes of exhaustion'" (internal citation omitted)). But absent waiver of the exhaustion requirement, there is no other avenue for judicial review of a denial of a claim for benefits. See 42 U.S.C. § 405(h). Thus, "[b]y terms of the Act . . . a dismissal without a hearing is not a 'final decision' subject to judicial review." Reafsnyder v. Astrue, No. 11-659, 2011 WL 5295223, at *2 (C.D. Cal. Nov. 2, 2011); see also Hoye, 985 F.2d at 991 (by refusing to attend hearing, claimant "waived his opportunity for a hearing" and "failed to exhaust the administrative remedy upon which judicial review depends"); Bacon v. Sullivan, 969 F.2d 1517, 1519 (3d Cir. 1992) (holding that the decision by the Social Security Administration not to consider an untimely request for review is not a "final decision" subject to judicial review); Sheehan v. Sec'y of Health, Educ. & Welfare, 593 F.2d 323, 327 (8th Cir. 1979) ("If claimant may avoid the timely

exhaustion of remedies requirement, any claimant could belatedly appeal his claim at any time and always obtain district court review of an ALJ's decision.").

Here, because the prior ALJ dismissed Plaintiff's mother's belated hearing request as untimely—finding no good cause for Plaintiff to have missed the filing deadline—and because Plaintiff failed to further appeal the prior ALJ's dismissal to the Appeals Council, no reviewable "final decision" has been rendered in Plaintiff's prior social security claim. Thus, on its face, the Court lacks jurisdiction to consider this issue. See Burbage v. Schweiker, 559 F. Supp. 1371, 1372-73 (N.D. Cal. 1983) (dismissing complaint for lack of jurisdiction where ALJ dismissed hearing request as untimely and found no good cause for extension); Garth v. Astrue, No. 11-05592, 2013 WL 257090, at *5 (N.D. Cal. Jan. 23, 2013) ("[T]he ALJ's finding that there was no good cause for having missed the deadline and dismissal of Plaintiff's request for hearing as untimely is not itself a 'final decision' subject to judicial review."); Reafsnyder, 2011 WL 5295223, at *2 (finding no "final decision" where the ALJ dismissed a plaintiff's hearing request as untimely and found no good cause to rebut presumption that she received notice of the denial of her reconsideration request); see also Matlock, 908 F.2d at 493-94.

The Court further declines to waive the exhaustion requirement because Plaintiff has not alleged a colorable constitutional violation. For a constitutional claim to be "colorable," it must not be "wholly insubstantial, immaterial, or frivolous." Udd, 245 F.3d at 1099. The claim must be "supported by 'facts sufficient to state a violation of substantive or procedural due process.'" Klemm v. Astrue, 543 F.3d 1139, 1144 (9th Cir. 2008) (internal citation omitted). Here, Plaintiff has not adequately alleged that her due process rights have been violated by the ALJ's failure to consider "good cause" under SSR 91-5p, because Plaintiff does not appear to have any relevant or

cognizable rights or remedies under that regulation.[4] Plaintiff acknowledges that her mother was "handling her affairs" when she was a minor and that her mother filed the belated request for a hearing. See JS at 49; AR 69-70. Under SSR 91-5p, "[w]hen a claimant presents evidence that mental incapacity prevented him or her from timely requesting review of an adverse determination, decision, dismissal, or review by a Federal district court, <u>and the claimant had no one legally responsible for prosecuting the claim</u> (e.g., <u>a parent of a claimant who is a minor</u> . . . ) at the time of the prior administrative action, SSA will determine whether or not good cause exists for extending the time to request review." SSR 91-5p, 1991 WL 208067, at *2 (emphasis added). By Plaintiff's own admission, Plaintiff's mother prosecuted, however ineffectively, Plaintiff's prior social security claim on her behalf. See JS at 69; see also AR 66 ("Irene Rodriguez on behalf of Natasha Marie Rodriguez"). Thus, regardless of Plaintiff's mental state at that time, Plaintiff has no present, enforceable right to seek a "good cause" determination under SSR 91-5p. As such, Plaintiff has not alleged any "colorable" denial of due process by the ALJ's failure to discuss her rights to such a determination under the same.

**D.   Remand for Further Proceedings Is Appropriate**

The decision whether to remand for further proceedings is within this Court's discretion. See Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000) (as amended). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See id. at 1179 (noting that "the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"); Benecke v.

---

[4] Determining whether Plaintiff's constitutional claim is colorable necessarily involves some review of its merits. See Kent, 152 F. App'x at 564.

Barnhart, 379 F.3d 587, 593 (9th Cir. 2004).

A remand is appropriate, however, where there are outstanding issues that must be resolved before a determination of disability can be made and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated. See Bunnell v. Barnhart, 336 F.3d 1112, 1115-16 (9th Cir. 2003); see also Garrison v. Colvin, 759 F.3d 995, 1021 (9th Cir. 2014) (explaining that courts have "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act."). Here, remand is appropriate for the ALJ to fully and properly assess how Plaintiff's mental impairments factor into her disability determination.[5]

### III.
### CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is REVERSED and the action is REMANDED for further proceedings.

Dated: February 27, 2018

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge

---

[5] The Court makes no finding as to whether Plaintiff's mental impairments affect her ability to sustain work activities.